NATIONAL AGRICULTURAL
CHEMICALS ASSOCIATION
et al., Plaintiffs,

v.

Richard E. ROMINGER, Director,
California Department of Food
and Agriculture, Defendant.

International Chemical. Workers Union, AFL–CIO, an unincorporated association; American Federation of State, County and Municipal Employees, East Bay Parks Local 28, an unincorporated association; Ofelia Rico; Amelia Rodriguez; Porfirio Monteon, Intervenors.

Civ. No. S–80–85 LKK.

United States District Court,
E. D. California.

Sept. 19, 1980.

Pillsbury, Madison & Sutro, San Francisco, Cal., Sellers, Conner & Cuneo, Washington, D. C., for plaintiffs.

Joel S. Moskowitz, Deputy Atty. Gen., State of Cal., Sacramento, Cal., for defendants.

Ralph Santiago Abascal, Calif. Rural Legal Assistance, Sacramento, Cal., for intervenors.

Edward C. Gray, Deputy Assoc. Gen. Counsel, Pesticide Division, EPA, Washington, D. C., for amicus curiae.

## OPINION AND ORDER

KARLTON, District Judge.

### INTRODUCTION

The National Agricultural Chemicals Association, Chemical Specialties Manufacturers Association and fifteen individual marketers of pesticides registered under the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq., brought this five count action against the Director of California's Department of Food and Agriculture seeking declaratory and injunctive relief. Plaintiffs' complaint attacks the newly adopted California Pesticide Regulations, 3 Cal.Admin.Code, Ch. 4, sub 1, group 2 and Cal.Food & Agric.Code § 12811. They assert various grounds which in general reduce to two; namely that the state's power to regulate has been preempted by FIFRA and that the regulations are an unconstitutional burden on interstate commerce.

Plaintiffs have now moved for a preliminary injunction on the first three counts and defendant has moved to dismiss.

### COUNT I

SECTION 24 OF FIFRA DOES NOT PREEMPT A STATE'S RIGHT TO REQUIRE ADDITIONAL DATA FROM MANUFACTURERS AND DISTRIBUTORS OF PESTICIDES. NOR DO THE STATE'S REQUIREMENTS CONSTITUTE AN UNCONSTITUTIONAL BURDEN ON INTERSTATE COMMERCE.

#### A. *Preemption.*

The first count alleges that the state registration procedure concerning so–called "restricted use" pesticides requires substantial additional data beyond that required by the Environmental Protection Agency (EPA) under FIFRA. Plaintiffs argue that this requirement is unlawful on two

grounds. First, that the state has no power to require such additional information since Congress intended that the FIFRA provisions preempt all state registration procedures. Second, plaintiffs contend that state registration procedure, in requiring such additional data, constitutes an unreasonable and therefore unlawful burden on interstate commerce.

It is clear that prior to 1972 the federal government's role relative to the manufacture and sale of pesticides was limited and supplemental to each state's exercise of its authority in the area. This case arises from the broadened exercise of national power embodied in the 1972 amendments to FIFRA, the Federal Environmental Pesticide Control Act of 1972, 7 U.S.C. §§ 136–136y. In that statute Congress made intrastate as well as interstate uses of pesticides subject to federal regulation, established a system of pesticide classification, placed additional limitations on use designations and established a system to certify pesticide applicators. That statute also contained the first version of Section 24 (the statute upon which plaintiffs rely). The section in issue was amended in 1978 and now reads as follows:

§ 136v. Authority of States

(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

(c)(1) A State may provide registration for additional uses of federally registered pesticides formulated for distribution and use within that State to meet special local needs in accord with the purposes of this subchapter and if registration for such

use has not previously been denied, disapproved, or canceled by the Administrator. Such registration shall be deemed registration under section 136a of this title for all purposes of this subchapter, but shall authorize distribution and use only within such State.

■ As I explain, I do not find that Section 24 preempts the state's power to require that prior to distribution of pesticides within the state the manufacturer and/or distributor supply data additional to that required to be supplied to EPA pursuant to the regulations implementing FIFRA.

■ The preemptive effect of the exercise of power by the federal government results from the provisions of Article 6, clause 2 of the Constitution.[1] Federal preemption of state regulation may occur in one of two ways—either Congress has "occupied the field," or the structures of state and federal statutes conflict. Note, *The Preemption Doctrine*, 75 Columbia L.Rev. 623, 624 (1975).

■ "Conflict preemption" exists where the state and federal statutes (or regulations) cannot operate simultaneously. *The Preemption Doctrine, supra*, at 626. Plaintiffs do not assert that this is such a case. Rather, they argue congressional "occupation of the field." Thus, the central question to be resolved entails determination and application of the standards for resolution of the issue of when Congress has occupied a particular field.

The Supreme Court has taught that congressional intent to preempt requires a "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). In *Florida Lime and Avocado Growers v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), the Court described the required showing as being a demonstra-

---

1. "This constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S.Const. art VI, cl. 2.

tion of "an unambiguous congressional mandate." *Id.* at 147, 83 S.Ct. at 1219.

As with any question of congressional intent, inquiry begins with the terms of the statute. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.,* —— U.S. ——, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Smith v. Califano,* 597 F.2d 152, 155 (9th Cir. 1979). Section 24 is divided into three subsections. Upon analysis, each subsection simply lends no support to plaintiffs' position as to this count. Subsection (a) by its terms clearly provides that the state may impose stricter regulations than those imposed under federal law. Indeed it is difficult to perceive what else Congress could have said to negate preemption by implication (see *infra*). Subsection (b) provides that no differing requirements are permitted in the limited areas of labeling and packaging (See "Count II," infra). Finally, subsection (c) permits state registration for use which is not ordinarily permitted by the federal regulations when the state can show a particular local need. To put it bluntly, except as to labeling and packaging, a congressional intent to prohibit any registration which differs from the federal requirements is simply not to be found on the face of the statute.

Given the plain terms of the statute it may be that no resort to legislative history for interpretation is necessary or proper. *See, e. g., Church of Scientology of California v. U.S. Department of Justice,* 612 F.2d 417, 421 (9th Cir. 1979). However, even if we turn to the legislative history, no clear mandate is found. While, as plaintiffs suggest, there is indeed some indication that Congress may have intended to occupy the field of pesticide registration, the history may just as easily be read to indicate an intent to leave the states with great latitude in this area.

Thus support of preemption may be read in Senate Report 95–334 at p. 29: "Federal registration has preempted State registration except for 'special local needs'." Likewise we find a statement of Environmental Protection Agency Administrator Costle before the Senate Agricultural Committee:

"The Congress, through its enactment of the 1972 amended FIFRA, specifically transferred jurisdiction over intrastate pesticides, in the areas of registration, experimental use permits and emergency exemptions, from the States to a single Federal agency, EPA."

Conversely, House Report 92–511, p. 16 lists its version of the preemptive effects of the section: "In the case of 'restricted use' pesticides the States are left free to impose whatever restrictions they may wish (other than labeling and packaging). The States could also completely prohibit the use of these 'restricted use' pesticides within their jurisdictions." Senate Report 92–838 at p. 30, U.S.Code Cong. & Admin.News 1972, pp. 3993, 4128 reports on Section 24: "This section specifies the authorities retained by the States under the Act. Generally, the intent of the provision is to leave to the States the authority to impose stricter regulation on pesticides use than that required under the act."

Lastly, the April 1, 1976 Federal Register, Vol. 41, No. 64, p. 13986 describes the administrative agency's interpretation of the authority remaining in the states:

[I]t is important to note that section 24(a) of FIFRA expressly authorized State regulation of the sale or use of pesticides, provided that such regulation does not permit any sale or use prohibited by FIFRA. This authority clearly permits a State to register or otherwise regulate the distribution or use of pesticide products which have been registered pursuant to FIFRA.

The legislative history (together with the more or less contemporaneous administrative interpretation) provides the Court with something less than a "clear congressional mandate." Absent a clear indication of congressional intent to occupy the field on the face of the statute or in the legislative history, the courts have turned to other factors to determine an intent to occupy the field. These factors are the presence of a pervasive regulatory scheme of a peculiarly federal subject matter. *The Preemptive Doctrine, supra,* at 625. The Ninth Circuit

in *Conference of Federal Savings & Loan Association v. Stein*, 604 F.2d 1256 (9th Cir. 1979), refers to a finding based on factors outside the congressional expression as "implicit preemption."

■ It is entirely unclear whether under governing law this case presents a possible application of the doctrine of preemption by implication. It appears to me that when the preemption issue arises in a subject matter area within the state's historic police powers a finding of preemption may only be made where there is a clear indication of congressional intention to preempt rather than by implication. In *Florida Lime, supra*, the Court observed: "The settled mandate governing this inquiry, in deference to the fact that a state regulation of this kind is an exercise of the 'historic police powers of the States,' is not to decree such a federal displacement 'unless that was the clear and manifest purpose of Congress.'" *See also Rice v. Santa Fe Elevator, supra*, and *Jones v. Rath Packing*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

Since the area in question here is clearly one within the police power of the states and because a "clear congressional mandate" is lacking, our inquiry could appropriately well end without considering preemption by implication. Nonetheless, the Ninth Circuit in *Conference of Federal Savings and Loan, supra*, found preemption by implication where the issue tendered involved state housing legislation. After noting the approach laid out in *Florida Lime, Jones* and *Rice*, the Court found that the pervasive regulatory scheme required a finding of preemption. *Id.* at 1260. Since *Conference of Federal Savings* is not entirely clear on the issue, I will address the possibility of preemption by implication and view the subject matter area as an analytical tool in resolving the matter on its merits.

The provisions of FIFRA, while thorough, do not foreclose any independent state provisions. Moreover, as noted above, section 24(a) expressly provides authority to the states to continue regulation of sale and use. Finally, the subject matter militates against implied preemption.

■ In determining whether the nature of the subject matter is indicative of preemption, the courts have looked for areas which by their very nature admit only of national supervision. *Cf. Cooley v. Board of Wardens of the Port of Philadelphia*, 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1851), or where the subject demanded exclusive federal regulation to achieve uniformity vital to national interests. *Cf. Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Contrary to the type of interests which have been found to be peculiarly federal, the legislation in question here comes within the historic police powers of the state. The major goal of FIFRA is to protect the consumer by keeping unhealthful or unsafe commodities off the market and preventing deception of consumers. *See, Florida Lime*, 373 U.S. at 146, 83 S.Ct. at 1219. Nonetheless, "the supervision of the readying of foodstuffs for market has always been deemed a matter of peculiarly local concern." *Id.* at 144, 83 S.Ct. at 1218.

Thus I find: (1) that no irreconcilable conflict between FIFRA and the state legislation has been asserted; (2) the intent of Congress in passing Section 24 is less than the clear mandate of preemption required by the case law; (3) lastly, a perusal of the structure of the federal legislation and the involved subject matter does not indicate preemption by implication. Defendant's motion to dismiss the first count, insofar as it relies upon the theory of preemption, is granted.

### B. *No Burden on Interstate Commerce Exists.*

Plaintiffs also assert that the additional information required by the state constitutes an impermissible burden on interstate commerce.

Section 24 reveals both a broad grant of power to the states and a limitation on the exercise of that power. The limitation is twofold: first, state regulations must be stricter than those set by the EPA (unless the regulation comes under the provision of section c); and second, the state's power to

regulate labeling and packaging is limited. Otherwise, the statute expressly permits the states to regulate pesticides for the protection of their citizenry. This broad authorization to regulate forecloses plaintiffs' argument that there is an impermissible burden on interstate commerce.

Two cases delineate the appropriate analytical approach where state legislation pursuant to a federal grant of power is challenged as an impermissible burden on interstate commerce. In *Prudential v. Benjamin*, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946) the Court notes the tension between state and federal power. The Court then observes that the essence of the commerce clause is not one of limitation on Congress, rather it is a grant of legislative authority to the federal government. The limitation imposed by the clause is on the definition of commerce and within that definition only states' powers are confined. Thus, it is the negative function of the commerce clause which comes into play where the states attempt to legislate in a manner which intrudes on commerce. *Id.* at 423, 66 S.Ct. at 1151. The Court concludes: "The power of Congress over commerce exercised entirely without reference to coordinated action of the states is not restricted, except as the Constitution expressly provides, by any limitation which forbids it to discriminate against interstate commerce and in favor of local trade." *Id.* at 434, 66 S.Ct. at 1157 (footnote omitted).

In *Southern Pacific Co. v. State of Arizona ex rel. Sullivan*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945), the Court observed that "Congress has undoubted power to redefine the distribution of power over interstate commerce. It may either permit states to regulate the commerce in a manner which would otherwise not be permissible . . . or exclude state regulation even of matters of peculiarly local concern which nevertheless affect interstate commerce. . . ." *Id.* at 769, 65 S.Ct. at 1520. (citations omitted). *See also Chicago–Midwest Meat Ass'n. v. City of Evanston*, 589 F.2d 278 (7th Cir. 1978).

Thus it is clear that Congress has the power to provide the states with regulatory power over instances of interstate commerce such as those *sub judice.* Congress has, in Section 24, done just that. Given congressional authorization the state's exercise of that power does not represent an "unreasonable" and therefore impermissible burden on interstate commerce. Accordingly, defendant's motion to dismiss should be granted.

### C. Injunctive Relief.

Given my resolution of the rule 12(b)(6) motion, injunctive relief is inappropriate. The granting or denial of injunctive relief is dependent upon a determination of the seriousness of harm alleged balanced against the likelihood of success on the merits. It is said that the standard is a sliding scale, *i. e.*, the more serious the harm the less of a showing of a likelihood of success is required, and vice versa. *Benda v. Grand Lodge, Int'l Ass'n. of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). For the reasons set forth above, I will dismiss this count without leave to amend. Plaintiffs have no chance of prevailing; accordingly, injunctive relief is denied.

### COUNT II

### EVENTS SUBSEQUENT TO THE FILING OF THE COMPLAINT REQUIRE THE SECOND COUNT TO BE DISMISSED WITH LEAVE TO AMEND.

### A. The Change in California Regulations.

The second count alleges that the new California insecticide regulations contain labeling requirements that are in addition to or are different from those of FIFRA. Here again plaintiffs allege that FIFRA preempts the power of the state to require any labeling in addition to or different from those required by FIFRA.

Plaintiffs' second count rests upon their assertion that section 24(b) of the Act expressly precludes state regulation of the labeling of pesticides. Plaintiffs allege that California, by way of certain "protocols"

contained in the California Department of Food and Agriculture Protocol Manual (which is incorporated by reference into Title 3 of the California Administrative Code), has established labeling requirements that are different from and/or in addition to the labeling requirements of FIFRA. Accordingly, they contend that under the California regulations they are subject to these "protocols," and that the "protocols" are void by virtue of the federal preemption of labeling regulation.

■ Defendant now moves to dismiss Count II of the complaint on the basis of ripeness. The state has submitted to the court a Notice of Adoption of Emergency Regulations issued April 25, 1980, which provides that the protocol manual shall be effective only after revision and adoption pursuant to California's Administrative Procedure Act, Cal.Gov't Code §§ 11370 et seq. (West, 1966). I may, of course, take judicial notice of the California regulations. A court may take judicial notice of the pertinent law or regulations at any stage of the proceedings. Fed.R.Evid. 201. Whether such notice is characterized as a "legislative fact" rather than an "adjudicative fact" or merely as recognition of law as fact, "the effect is the same." *National Audubon Society v. Department of Water & Power of the City of Los Angeles*, 496 F.Supp. 499 (E.D.Cal.1980). As I shall explain *infra*, however, the taking of judicial notice of a change in regulations raises a question as to whether I must now treat the motion to dismiss as a motion for summary judgment.

**B.** *The Effect of Taking Judicial Notice.*

■ Ordinarily, when a party offers matters outside the record to support a motion to dismiss, the court may reject such material and treat the matter strictly on the pleadings or receive such evidence and treat the motion to dismiss as one for summary judgment. Fed.R.Civ.P. 12(b). "The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." 5

Wright & Miller, *Federal Practice & Procedure*, 678 (1969). In this circuit once a court accepts matters outside the pleadings it must ordinarily treat the motion as one for summary judgment under Fed.R.Civ.P. 56. *Whitner v. Davis*, 410 F.2d 24 (9th Cir. 1969). Thus, the question which is presented is whether upon this court's taking judicial notice of the change in California's regulations it is obligated to treat the motion as one for summary judgment. , I think not.

It is important to recognize that what I have received is, in effect, evidence of a change in law. The court is required to apply applicable law when it can be found. It cannot be reasonably denied that if California had not brought the change in regulations to my attention but I had discovered it by independent research, I could apply the law to resolution of the issues tendered. Thus, for this purpose the change in the regulation is not an adjudicatory fact which requires summary judgment treatment. It seems to me such a change of regulation is akin to the contents of briefs and memoranda, reliance upon which would not require Rule 56 treatment. *See, e. g., Richardson v. Rivers*, 335 F.2d 996, 998 n.4 (D.C.Cir.1964); *Nix v. Fulton Lodge No. 2 Int'l Ass'n of Machinists & Aerospace Workers*, 452 F.2d 794 (5th Cir. 1971), *cert. denied* 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). Thus, despite my taking judicial notice of the change in California regulations I will continue to treat the matter as a motion to dismiss.

**C.** *The Suspension of the use of the "Protocols" Until Further Agency Action Suggests That This Issue is Not Now Ripe For Judicial Resolution.*

The Supreme Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) delineates the point at which judicial intervention is appropriate where agency action is at issue. The Court took a twofold approach requiring an evaluation of both the fitness of the issues for judicial decision and the hardship to the parties resulting from a withholding of court consideration. *Abbott Laboratories,*

*Id.* at 149, 87 S.Ct. at 1515. In the present case, unlike the cases relied upon in *Abbott Laboratories*, the rulemaking procedure of the agency is now (by virtue of the suspension of the protocols) simply not complete. Accordingly, the case not being ripe for adjudication, dismissal appears appropriate.

Plaintiffs, however, assert that despite the suspension of the regulations they are still being subjected to the protocols; alternatively they suggest that further labeling requirements are being imposed on a case–by–case basis. In support, plaintiffs direct my attention to Exhibit 1 of an affidavit they have filed in connection with their motion for injunctive relief. That exhibit directs a member of plaintiff organization, the Upjohn Company, to perform certain studies which plaintiffs allege is "pursuant to two pages it excerpted from the Protocol Manual." (See plaintiffs' prehearing memorandum at 11, n.13).

█ The complaint at pages 8–10 sets out the labeling allegations. The gravamen of these allegations is that California is requiring additional labeling under the authority of pp. A–15–31 of the Protocol. Plaintiffs' present allegation, however, is that the agency is either still enforcing the protocols, or that it is requiring different labeling on a case–by–case basis. These allegations cannot be said to be fairly contained within the present complaint. Accordingly, the motion to dismiss to permit repleading (or a supplemental complaint) is required.

█ In any event, even if I were required to treat the motion as one for summary judgment, it would be denied. When deciding a motion for summary judgment the court may evaluate not just the issues presently tendered by the pleadings but those which can reasonably be raised in an amended pleading. 10 Wright & Miller, *Federal Practice and Procedure* 477 (§ 2722) (1973). The affidavits submitted by plaintiffs clearly suggest that despite the change in the regulations, the state continues to conduct itself in a manner plaintiffs believe unlawful. Plaintiffs will be granted leave to amend.

Since I have determined that the present pleadings do not present an issue ripe for adjudication, injunctive relief under them appears clearly inappropriate. The denial of injunctive relief is without prejudice to a renewal of the motion upon a further showing. While the affidavits submitted by plaintiffs indicate that facts have occurred subsequent to the filing of the complaint which militate against granting summary judgment on the issue of the state's use of the protocols, they too do not appear dispositive. I therefore dismiss the count in its present form and grant plaintiffs leave to amend to include such new allegations as they deem appropriate regarding the protocols.

## COUNT III

### THE PLAINTIFFS ARE WITHOUT STANDING TO CHALLENGE THE DUTIES OF THE COUNTY AGRICULTURAL COMMISSIONERS.

█ In Count III plaintiffs challenge the use of the county agricultural commissioners to effectuate the state's pesticide regulatory program. They assert that the new state insecticide regulations delegate significant authority to county agricultural commissioners to, *inter alia*, grant or deny permits for the use of insecticides, exempt nonrestricted pesticides from permit requirements, and to designate environmentally sensitive areas, such designations resulting in additional limitations on the use of pesticides. Plaintiffs contend as to this count that FIFRA precludes political subdivisions of states from regulating the use of pesticides and that such delegation of authority unlawfully burdens interstate commerce. On this basis they now seek injunctive relief.

Defendant Rominger has moved to dismiss this count on three grounds: First, he contends that plaintiffs are not affected by the activities of the county agricultural commissioners and thus lack standing to challenge the state permit program. Secondly, defendant contends that the agricultural commissioners are as a matter of

law agents of the state and are enforcing a state regulatory program which is expressly permitted by FIFRA's section 24(a). Finally, defendant argues that should I be uncertain as to the agent or independent status of the county agricultural commissioners, I should abstain pursuant to *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 81 L.Ed. 1424 (1943). Since I find there is no standing on the part of these plaintiffs to challenge the use of the county commissioners, the remaining arguments of defendant need not be addressed.

 The question of standing must be analyzed in terms of two inquiries: " '[W]hether the [party] alleges that the challenged action has caused him *injury in fact*, economic or otherwise;' and whether the interest sought to be protected by the complainant is *arguably within the zone of interests [sought] to be protected or regulated* by the statute or constitutional guarantee in question.' " (Emphasis in original). L. Tribe, *American Constitutional Law*, 79–80 (1978). *See also, e. g. FCC v. Sanders Brothers Radio Station*, 309 U.S. 470, 473–477, 60 S.Ct. 693, 696–698, 84 L.Ed. 869 (1940). As part of the injury in fact requirement, the litigant must show that the challenged action caused the litigant's injury. *Boating Industry Ass'ns. v. Marshall*, 601 F.2d 1376 (9th Cir. 1979). In *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the Court observed "[i]n sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Id.* at 38, 96 S.Ct. at 1924. Plaintiffs further allege that the decentralization of the permit process places a burden on interstate commerce and that since they are engaged in interstate commerce they are therefore injured by the decentralized procedure. While this argument has some initial appeal, on closer examination it does not satisfy the injury in fact requirement. The issue of standing is not to be resolved in terms of plaintiffs' generalized assertions but rather upon an examination of how the specific burdens alleged effect them.

The allegations challenge the decentralized use permit process insofar as it permits the local agricultural commissioner to grant, deny or qualify the application of the product by the user. Plaintiffs are not users, but are manufacturers. Different standards placed on the applicators of the pesticides do not in any way affect the manufacturing standards which would apply to plaintiffs. Plaintiffs have not alleged, nor is there anything before me to indicate that the county agricultural agents would apply any more stringent standards than the state. Indeed, at this stage of the proceedings no harm to the plaintiffs can be perceived. It may well be that a statewide applicator would have standing to challenge the delegation (a matter I need not, nor do, decide) on the basis that such a plaintiff is required to deal with multiple agencies. Plaintiffs, however, are in a different category. They are not directly affected and they do not have to deal with multiple agencies. Moreover, there is no showing that the power delegated to the county agents is or will be exercised in a manner different from the state's direct exercise of the power. The plaintiffs suffer no injury which would be necessarily redressed by a favorable decision on this count. I find that plaintiffs have failed to allege injury in fact and are therefore without standing to challenge the California permit program. Because I cannot ascertain whether there are unalleged facts which demonstrate standing, the dismissal will be with leave to amend.

## COUNT IV

### THE ISSUE OF TOLERANCE LEVELS IS NOT RIPE FOR ADJUDICATION.

The fourth count alleges that under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–392 (1972) (FDCA), the EPA is authorized to establish tolerances with respect to the use of pesticides in or on raw agricultural commodities. *Id.* at § 346a. They argue that no pesticide can be registered under FIFRA unless a tolerance or an

exemption therefrom has been established pursuant to FDCA. In essence, plaintiffs allege that there exists a broad federal regulatory scheme which establishes residue tolerances and that prior to January 4, 1980, California residue tolerance regulations were keyed to these federal regulations. Plaintiffs assert that the new California regulation, 3 Cal.Admin.Code § 2490(c), permits the Director of Agriculture to establish California tolerances which differ from the federal tolerances. Plaintiffs contend that by virtue of federal preemption California is without authority to establish state tolerance levels. Alternatively, plaintiffs contend that such tolerance standards would impose an undue burden on interstate commerce. Plaintiffs do not presently seek injunctive relief under this count.

Defendant Rominger has moved to dismiss Count IV on the ground that there is no case or controversy. Defendant argues that plaintiffs fail to allege that any California tolerances have been established. Defendant further argues that in any event plaintiffs will suffer no direct injury by way of this regulation, contending that only producers and marketers are affected by it.

While plaintiffs do not dispute defendant's assertion that tolerances have not yet been established, they argue that they are presently subject to Title 3, California Administrative Code, § 2372, which provides, "Residue data required by subsection 2369(c) and section 2370 shall be obtained under California use conditions taking into consideration differences in paints, soils, climatic conditions, and application." Plaintiffs assert that the only conceivable use of the data they are required to provide by virtue of the cited regulation is to review and formulate California tolerance standards. Thus, plaintiffs conclude that they are incurring present economic injury by having to supply tolerance data, and that by requiring such data the state is presently acting under section 2490.

■ In determining whether a motion to dismiss is proper the court looks to the allegations of the complaint. Fed.R.Civ.P. 12(b). The gravamen of Count IV is that the setting of lower tolerances under section 2490(c) is preempted by FIFRA and is a discriminatory burden on interstate commerce. Complaint, pp. 12–14. The assertions articulated in their Points and Authorities in Opposition to the motion to dismiss are not contained in the complaint as written. Fed.R.Civ.P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim" and even under the liberal standard of federal pleading the complaint must give the defendant fair notice. Notice of the assertions now made by plaintiffs, i. e., that the department is collecting information under the guise of section 2372 so that new tolerance levels may be established, is simply not contained within the pleadings as presently framed. Accordingly, in effect plaintiffs admit that the count does not state its present cause of action. As such it should be dismissed with leave to amend to set forth its present position. Moreover, even if such were not the case it appears to me that any challenge to the setting of different tolerances is not ripe.

■ The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner, supra* at 148, 87 S.Ct. at 1515. Section 2490(c), challenged by the plaintiffs, states only that the secretary may set *different* tolerances if he finds the EPA tolerances are not appropriate for California conditions. No party disputes that no levels have been set. Section 24(c) of FIFRA permits a state to register a pesticide for additional uses if local conditions justify such use and the EPA has not previously "denied, disapproved or cancelled" such use. The legal questions raised if the state were to set lower standards are quite distinct from those raised by the setting of higher standards. Until the agency acts to set these standards, the agency's action is speculative at best.

Plaintiffs alternatively argue that while no lower levels have been set, the case is ripe since a parallel state action seeks to compel defendant to set lower standards. The fact that parallel proceedings in the state court exist with regard to these regulations does not make the controversy ripe. On the contrary, plaintiffs' assertions that the state courts are in the process of interpreting the state statute may be sufficient in itself to justify my refraining from making a determination as a matter of " '[w]ise judicial administration....' " *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

To the extent plaintiffs seek relief for the gathering of information under other regulations to establish tolerance levels, such assertions are not contained within plaintiffs' Count IV. To the extent plaintiffs assert that the Fourth Count is ripe although the agency has not acted to set these regulations, I hold that a determination of the ability of the agency to establish different standards should not be made until the agency sets such standards and in any event such an action is properly stayed pending the resolution of the issue by the courts of the State of California.

### COUNT V

### PLAINTIFFS' CHALLENGE TO SECTION 2369(d) IS NOT YET RIPE FOR DETERMINATION.

Plaintiffs' Fifth Count alleges that section 2369(d) of the California Administrative Code, Title 3, permits registration applicants to refer to data previously submitted by other applicants in lieu of submitting their own data. Plaintiffs contend that such referencing is an unlawful taking of property.

Plaintiffs further allege that the Department of Food and Agriculture by a letter dated January 21, 1980, rescinded its previous policy of treating as confidential any data claimed to contain trade secrets. Plaintiffs contend that the department's refusal to protect trade secrets is also an unlawful taking of property.

Defendant now moves to dismiss asserting that there is no case or controversy. As to that portion of the count based on the change of policy defendant relies on a letter from the administrative agency assertedly "clarifying" the agency's challenged position but in effect abandoning it.

As I understand the plaintiffs' position, given the letter they no longer assert a case or controversy concerning this aspect of the count. (See Plaintiffs' Points & Authorities in response to defendant's motion to dismiss pp. 16–17).[2]

As to the referencing issue, defendant argues that since plaintiffs have not alleged that anyone has ever sought to reference such material, no case or controversy exists. I disagree.

In order for a case to present a case or controversy all that need be present is that the contemplated event, in all likelihood, will occur. *Tribe, supra,* at 61. "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Blanchette v. Connecticut Gen. Ins. Corps.,* 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974).

The regulation in question by its terms permits other applicants to reference plaintiffs' material. The state, by virtue of the regulation has asserted its right to permit applicants to reference material. The agency has made its final determination on the issue. *See Abbott Laboratories v. Gardner, supra.* Plaintiffs assert an interest in preventing the material from being referenced

---

2. The propriety of my considering this letter in relation to the motion to dismiss and its legal effect are not raised by defendant. Rather, as noted, they appear to accept its legal effect. Accordingly, I will as well. In doing so I make no judgments as to whether the letter would properly be before me if objection was raised, nor do I resolve any issue concerning the legal effect of the letter. I merely accept the apparent position of plaintiffs that the letter renders this portion of the count moot.

and a right to prevent the material from being so used. A case or controversy is therefore present.

While a case or controversy exists, plaintiffs' complaint does not demonstrate ripeness. The doctrine of ripeness while related to the Article III notion of justiciability, is a product of prudential considerations "ordinarily emphasiz[ing] a *prospective* examination of the controversy which indicates that future events may affect its structure in ways that determine its *present* justiciability...." *Tribe, supra,* at 61. *See also Longshoremen's and Warehousemen's Local 37 v. Boyd,* 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954).

Plaintiffs might have alleged that referencing has occurred, or that it has been attempted or that as a fact someone will attempt to reference. Given who the plaintiffs are, they are in a better real world position than almost anyone to evaluate the imminence of someone requesting a referencing. Alternatively, plaintiffs might allege that such referencing would occur without prior notice and that by waiting for the state to be presented with a request to reference, the alleged taking could occur without plaintiffs being able to take action to enjoin it. No such allegations have been made. Thus, in its present form no allegation of Count V demonstrates the requisite ripeness. I will therefore dismiss that count with leave to amend.

ORDER

For all of the above reasons,

1. Count I is dismissed without leave to amend.

2. Count II is dismissed with leave to amend.

3. Count III is dismissed with leave to amend.

4. Count IV is dismissed with leave to amend, and thereafter further adjudication of the count is stayed pending resolution of the parallel state action.

5. Count V is dismissed with leave to amend.

6. Plaintiffs' motion for preliminary injunction is denied.

IT IS SO ORDERED.