**FLORIDA CITRUS PACKERS, a non-profit cooperative association, Seald-Sweet Growers, Inc., a Florida corporation, Seald-Sweet International, Inc., a Florida corporation, Egan, Fickett & Company, a Florida corporation, D N E Sales, Inc., a Florida corporation, Nevine Fruit Company, a Florida corporation, Egan Fickett of Ft. Pierce, Inc., a Florida corporation, East Coast Packers, Inc., a Florida corporation, United Fresh Fruit and Vegetable Association, and the California Grape and Tree Fruit League, Plaintiffs,**

v.

**STATE OF CALIFORNIA, DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, Occupational Safety and Health Standards Board; Donald Vial, an individual; Art Carter, an individual; Gerald O'Hara, an individual; Richard L. Wade, an individual, Defendants,**

International Longshoremen's and Warehousemen's Union, Locals 10 & 34, Defendant/Intervenors.

No. C–81–4218 EFL

United States District Court, N. D. California.

July 26, 1982.

As Amended Aug. 4, 1982.

John K. Aurell, Dennis R. Ferguson, Holland & Knight, Tallahassee, Fla., Richard Harrington, Michael Simmonds, Athearn, Chandler & Hoffman, San Francisco, Cal., for plaintiffs.

John M. Rea, Chief Counsel, Office of the Director, Peter H. Weiner, Chief Deputy Director, Michael D. Mason, Chief Counsel, Dept. of Indus. Relations, Div. of Occupational Safety and Health, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION

LYNCH, District Judge.

This opinion discusses solely the issue raised in plaintiffs' motion for partial summary judgment and defendants' counter-motion thereto.

The issue is whether, as plaintiffs contend, preenforcement approval by the United States Secretary of Labor of California's new and more stringent standard relating to the permissible exposure of California workers to ethylene dibromide (EDB) is required under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651, *et seq.* (the Act).

The question of whether a state may enforce a standard change under the Act prior to obtaining federal approval is a question of first impression.

The Act outlines a worker safety and health scheme designed "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources...." 29 U.S.C. § 651(b). In addition to procedures for formation and enforcement of federal safety and health standards, the Act provides a mechanism for state development and enforcement of occupational safety and health standards. 29 U.S.C. § 667. Where no federal standard is in effect, the Act does not limit the state's ability to assert its own standards. 29 U.S.C. § 667(a).

Where federal standards have been promulgated in a given area, and the state also

wishes to regulate in that area, the Act requires submission of a state plan to the United States Secretary of Labor. 29 U.S.C. § 667(b). Subsection (b) of 29 U.S.C. § 667 provides:

Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.

The state plan submitted pursuant to subsection 667(b) "or any modification thereof," is to be approved by the Secretary if it meets eight specified criteria. 29 U.S.C. § 667(c). One criterion is that the "standards (and the enforcement of which standards) are or will be at least as effective in providing safe and healthful employment and places of employment as the standards promulgated under Section 655 of this title [the federal standards] which relate to the same issues...." 29 U.S.C. § 667(c)(2).

A federal standard limiting permissible EDB exposure to 20 parts EDB per million parts air (ppm) was established pursuant to 29 U.S.C. § 655 and remains in effect as the federal standard. 29 C.F.R. § 1910.1000, Table Z–2. Pursuant to 29 U.S.C. § 667(b), California submitted a state plan for federal Occupational Safety and Health Administration (Fed-OSHA) approval.[1] This plan, which was approved pursuant to 29 U.S.C. § 667(c) in 1973, contained a permissible EDB worker exposure level identical to that of its federal counterpart. Allegedly reacting to the combination of increasing evidence of EDB's toxicity and the expanding use of EDB as a fumigant against the medflies discovered in California during the summer of 1981, California OSHA (Cal-OSHA) proposed reducing the permissible EDB worker exposure level. A new, emergency standard reducing the permissible ex-

posure level of EDB from 20 parts per million to 130 parts per billion was adopted by defendant Standard Board and approved by the California Office of Administrative Law. Pursuant to General Industry Order 5219 (GISO 5219), this new, stricter standard has been enforced by Cal-OSHA since September 23, 1981.

On October 9, 1981, Cal-OSHA submitted the new emergency standard to Fed-OSHA for approval. Fed-OSHA has neither approved nor disapproved the emergency regulation.

Since February 19, 1982, the stricter California standard has been enforced as a permanent standard, again allegedly based upon the health hazards posed to workers exposed to EDB. To date, the permanent California standard has not been submitted to Fed-OSHA for its approval.

Plaintiffs comprise approximately 90 percent of Florida's citrus packing and shipping industry. The new California standard allegedly has resulted in a virtual halt of exports of Florida citrus to California, causing economic harm to Florida's citrus industry. Since the date Cal-OSHA adopted and began enforcing GISO 5219, many employers, workers, retailers and distributors in California have refused to accept, handle and store Florida citrus, allegedly as a result of the new regulation.

United Fresh Fruit and Vegetable Association (United) has intervened as a plaintiff in this action. United is a member-supported non-profit trade association representing 80 percent of the total commercial fresh fruit and vegetable marketing in the United States. United's membership has allegedly suffered economic injury due to California's new EDB regulatory scheme.

Plaintiffs are required to fumigate their citrus with EDB prior to shipping the fruit to California. See, U. S. Department of Agriculture's regulations issued pursuant to the Federal Plant Pest Act, 7 U.S.C. §§ 150aa, et seq., and the Plant Quarantine Act, 7 U.S.C. §§ 151, et seq.

---

1. The terms, "the Secretary of Labor," "the Secretary" and "Fed-OSHA" are used inter-changeably throughout this opinion.

At present, there is no feasible permissible method other than EDB fumigation to control certain insects, including fruit flies.

Plaintiffs essentially contend that 29 U.S.C. § 667 provides that a modification to a state standard on a subject on which a federal standard exists is preempted by the federal standard until it receives federal approval. This preenforcement approval requirement is found, according to plaintiffs, in the clear language of 29 U.S.C. § 667(c); they argue that the use of the word "approve" in that subsection indicates a requirement of preenforcement federal approval of any modification to an earlier-approved plan.

▉ The Court holds that preenforcement federal approval of state modification to an approved plan is *not* required by the Act. An examination of the language, the underlying regulations, the history and Fed-OSHA's own interpretation of the Act provide the support for this holding.

## DISCUSSION

### Language

▉ Plaintiffs' argument that the use of the word "approve" rather than, for example, "ratify" in subsection 667(c) is clear facial evidence of a preenforcement approval requirement is unsound. Instead of being clear on its face, the Court finds that the Act is *silent* regarding preenforcement approval.

▉ Where the statutory language is inadequate, the Court should look to the legislative history. *Train v. Colorado Public Interest Group*, 426 U.S. 1, 9–10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 871 (9th Cir. 1981).

### History

The legislative history of the Act reveals a Congressional intent to promote greater worker protection, with the federal government setting certain minimum acceptable standards. 3 U.S.Code Congressional and Administrative News, pp. 5177–5241 (1970).

The Senate Report discussing S.2193, which became the basis for the Act, explained:

[The Act's] purpose . . . is to reduce the number and severity of work-related injuries and illnesses . . .

Encouragement is given to Federal-State cooperation, and financial assistance is authorized to enable States, under approved plans, to take over entirely and administer their own programs for achieving safe and healthful job sites for the Nation's workers.

*Id.*, at 5177.

The legislative history cited by plaintiffs (Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment, pp. 11–13) supports the proposition that state *plans* must be approved before they are enforceable. The issue before the Court is whether a modification to an approved state plan requires prior federal approval.

The legislative history reveals a Congressional intent to promote worker safety. To the extent that preenforcement approval of the California EDB exposure standard would delay the protection of California workers from the perceived dangers of EDB, it is inconsistent with the purpose of the Act.

### Regulations

Several of the regulations promulgated pursuant to the Act (29 C.F.R. § 1901, *et seq.*) inferentially buttress defendants' argument that preenforcement approval is *not* required; none support plaintiffs' contrary contention. One criterion the Secretary of Labor is to consider when approving a state plan is whether that plan contains a mechanism for the prompt promulgation of emergency temporary standards "for the protection of employees against new and unforseen hazards. . . ." 29 C.F.R. § 1902.-4(b)(2)(v). Additional support is found in the regulation which provides that state initiated changes, impacting the effectiveness of the state program except for two exceptions not relevant here, "may be submitted at any time generally not to exceed six months after the change occurred." 29 C.F.R. § 1953.41(a).

It is unnecessary for the Court to decide at this point whether the new California EDB standard is a product standard under 29 U.S.C. § 667(c)(2). A finding that the standard is a product standard would not alter the holding that preenforcement approval is not required. Where the product standard clause applies, the determination of whether the standard is an undue burden on interstate commerce is to be treated as a "condition subsequent in light of the facts and circumstances which may be involved," providing further support for the argument that preenforcement approval is unnecessary under the Act. 29 C.F.R. § 1952.7(b).

### Fed-OSHA Interpretation

Federal OSHA itself interprets the Act as allowing interim, preapproval enforcement. In a letter from the Deputy Assistant Secretary of Labor, Mark Cowan, to the Director of the California Department of Industrial Relations, defendant Donald Vial, Cowan explained that ". . . under [Federal] OSHA law and policy, the State is permitted to enforce this [new EDB] standard until such time as final determination is made by [Federal] OSHA on its acceptability." Defendants' Exhibit A, Docket No. 7.

■ It is clear that a court should give deference in interpreting a statute to the interpretation of the agency charged with its implementation. *Skidmore v. Swift Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The extent of deference owed by a court to an agency's interpretation of a statute is unclear. In *Skidmore, supra*, the United States Supreme Court noted that some deference is due to the agency since "the Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case." 323 U.S. at 139, 65 S.Ct. at 164. More recently, the Supreme Court stated that "[w]hen faced with a problem of statutory construc-tion, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964), *rehearing denied*, 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965). *See, also, Red Lion Broadcasting v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) (". . . the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong"). Whether "some deference" or "great deference" is merited is not critical here since no requirement of preenforcement approval is evident from the statute.

■ Plaintiffs are correct in their assertion that a court is obligated to follow a statute when its meaning is clear. *See, Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). Here, however, the Court is not confronted with an agency interpretation conflicting with a statute's clear meaning. The Court has already noted that the language of the statute is silent regarding preenforcement approval and that the underlying regulations and legislative history provide, at least, inferential support to the view taken by Fed-OSHA that prior federal approval is *not* mandated by the Act.

■ In light of the language, regulations, history and Fed-OSHA interpretation, this Court finds no preenforcement approval requirement mandated by the Act.[2] The Act does not preempt California from strengthening its EDB standard. Federal preemption under the Supremacy Clause occurs when either Congress has occupied the field that is the subject of the state law or when the state law is in conflict with a specific federal law. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–47, 83 S.Ct. 1210, 1217–19, 10 L.Ed.2d

---

**2.** After the hearing on the summary judgment motions, the plaintiffs submitted for the first time an argument asking the Court to find a mandate of preenforcement approval in the Occupational Safety and Health Act by analogy to the allegedly similar Clean Air Act, 42 U.S.C. §§ 7401, *et seq.* The Court refuses to construe the two Acts as sufficiently similar to allow the case law interpreting the latter to be persuasive authority for interpretation of the former.

248 (1973); *Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission*, 659 F.2d 903, 919 (9th Cir. 1981). Subsection 667(b) of the Act explicitly provides for the establishment of state plans on "any occupational safety or health issue with respect to which a Federal standard has been promulgated . . . ." The language and purpose of the Act show that Congress did not intend to occupy the field and that states are authorized to provide workers greater protection than that provided by the federal legislation.

Nor is the California EDB standard preempted due to a conflict with the federal EDB standard. As the United States Supreme Court has recently reemphasized, "the inquiry is whether there exists an irreconcilable conflict between the federal and state regulatory schemes." *Rice v. Norman Williams Co., et al.*, —— U.S. ——, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). Here, there is no "irreconcilable conflict" since simultaneous compliance with both the state and federal EDB regulation is possible.

The Court thus holds that the Act does not require California to have its EDB standard approved by Fed-OSHA *before* it can be enforced. Defendants argued that the language of § 667(c) merely required federal approval of a modification to the original state plan before that plan is approved. After that point—here 1973—Fed-OSHA only may react to modifications which impair the effectiveness of the entire state plan under § 667(f). The Court does not need to reach the validity of defendants' interpretation for the purposes of deciding the preenforcement issue, but disagrees with defendants to the extent that they contend that a modification to an earlier-approved standard (in an approved state plan) does not have to be submitted to Fed-OSHA for at least its *subsequent* approval. *See*, 29 C.F.R. 1953.41.

Faced with this question of statutory construction and there being no genuine issue of material fact, the Court denies plaintiffs' motion for partial summary judgment and

grants defendants' counter-motion for summary judgment on Count I of plaintiffs' amended complaint.

IT IS SO ORDERED.