**FLORIDA CITRUS PACKERS, et al., Plaintiffs,**

**v.**

**STATE OF CALIFORNIA, Department of Industrial Relations, Division of Occupational Safety and Health, Occupational Safety and Health Standard Board, et al., Defendants.**

**No. C–81–4218 EFL.**

United States District Court, N.D. California.

Oct. 4, 1982.

LYNCH, District Judge.

On July 26, 1982, the Court granted defendants' motion for summary judgment to Count I of plaintiffs' amended complaint and denied plaintiffs' motion for partial summary judgment thereto. *Florida Citrus Packers v. State of California*, 545 F.Supp. 216 (N.D.Cal.1982). The Court reserved judgment on the remaining aspects of the defendants' motion to dismiss or for summary judgment and now grants defendants' motion.

This Court dismisses Counts II and III of the plaintiffs' amended complaint and grants summary judgment on Count IV.

The facts of the case are fully set out in the earlier opinion cited *supra*. In brief, this case concerns a challenge by representatives of the Florida citrus packing and shipping industry to California's General Industry Order 5219 (GISO 5219) which reduces the permissible worker exposure level of California workers to ethylene dibromide (EDB). When the California state plan was originally approved by the federal Occupational Safety and Health Administration (Fed–OSHA) in 1973, it contained a permissible EDB worker exposure level identical to that of Fed–OSHA. Since the date the California Occupational Safety and Health Administration (Cal–OSHA) began enforcing GISO 5219's more stringent standard, many workers, employers, retailers and distributors in California have refused to accept, handle and store Florida citrus, allegedly due to the new regulation.

*Products Standard*

In Count II of its amended complaint, plaintiffs allege

> Defendants have enforced GISO 5219 and the Permanent Standard despite the lack of compelling local conditions and despite its undue burden upon interstate commerce, in direct violation of 29 U.S.C. § 667(c)(2), and Article VI, Section 2, of the Constitution of the United States
> . . . .

Defendants contend, among other things, that Fed–OSHA should decide whether the EDB standard is within the "product standard" clause of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651, *et seq.* (the Act) and move to dismiss this claim.

The Act directs the Secretary to approve a state plan, "or any modification thereof," if the plan meets eight enumerated criteria. 29 U.S.C. § 667(c). The second criterion mandates approval if the plan

> (2) provides for the development and enforcement of safety and health standards relating to one or more safety or health issues, which standards (and the enforcement of which standards) are or will be at least as effective in providing safe and healthful employment and

places of employment as the standards promulgated under Section 655 of this title which relate to the same issues, <u>and which standards, when applicable to products which are distributed or used in interstate commerce, are required by compelling local conditions and do not unduly burden interstate commerce</u> . . . .

29 U.S.C. § 667(c)(2). The "product standard" clause, the portion underscored above, thus requires a finding of compelling local conditions and the lack of an undue burden on commerce if the standard or standard modification applies to "products which are distributed or used in interstate commerce." The facially broad language of the "product standard" clause seems to conflict with the legislative history of the clause, which indicates that Congress intended a more restrictive application. *See* Subcommittee of Labor of Senate Committee on Labor and Public Welfare, Legislative History of the Occupational Safety and Health Act of 1970, pp. 500–01, 1041–42 (June 1971).

■ This Court holds that Fed–OSHA, the agency charged with the review of the new California standard under § 667(c), and not the United States District Court, should decide whether the EDB standard change falls within the "product standard" clause and, if so, whether that change is justified by compelling local conditions and not unduly burdensome on commerce. Such agency review is part of the mandated review process; "[j]udicial intervention into the agency process denies the agency an opportunity . . . to apply its expertise." *FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980); *see also Marshall v. Burlington Northern, Inc.,* 595 F.2d 511, 513 (9th Cir. 1979). Further, "questions of statutory interpretation are better left to an initial review by the agency itself for application of its specialized expertise in the area." *Marshall, supra,* at 513. Clearly, new standards and standard modifications must be submitted to Fed–OSHA to initiate the review mechanism. 29 C.F.R. § 1953.41.

Defendants' motion to dismiss Count II is therefore granted.

### Commerce Clause

■ Count III of plaintiffs' amended complaint alleges

Cal–OSHA's adoption and enforcement of GISO 5219 and the Permanent Standard constitutes discrimination against, an undue and unreasonable burden upon, and unlawful interference with interstate commerce, in violation of Article I, Section 8, Clause 3, of the Constitution of the United States, which will continue unless enforced and restrained by this Court.

Defendants' primary contention is that plaintiffs' Commerce Clause challenge is legally impermissible as a matter of law because Congress exercised in the Act its plenary authority to grant to the state the right to regulate in this area, subject only to the limitations of the "product standard" clause discussed *supra,* where applicable.

This Court is aware of the broad Congressional power over the regulation of interstate commerce. As the Supreme Court explained

Congress has undoubted power to redefine the distribution of power over interstate commerce. It may either permit the states to regulate commerce in a manner which would otherwise not be permissible . . . or exclude state regulation of matters of peculiarly local concern which nevertheless affect interstate commerce . . . .

*Southern Pacific Co. v. Arizona ex rel. Sullivan,* 325 U.S. 761, 769, 65 S.Ct. 1515, 1520, 89 L.Ed. 1915 (1945); *see also Western and Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1980); *Chicago-Midwest Meat Association v. City of Evanston,* 589 F.2d 278, 279 (7th Cir. 1978). Unlike *Western, supra,* which involved the complete abdication of federal regulation of the life insurance industry to the states, the instant situation involves the sharing of power between the states and the federal government. Enactment of the Act preempted that state law covered by the federal program in order to assure "safe and healthful working conditions." 29 U.S.C.

§ 651(b). The Act, however, includes "both a broad grant of power to the states and a limitation on the exercise of that power" in section 667. *See National Agricultural Chemicals Association v. Rominger,* 500 F.Supp. 465, 470 (E.D.Cal.1980).

As discussed above, a state plan or modification of an approved state plan must meet eight criteria. 29 U.S.C. § 667(c). These include, if applicable to a product "distributed or used in interstate commerce," a showing that the standard is compelled by local conditions and not an undue burden on commerce. 29 U.S.C. § 667(c)(2). Other than these several express limitations, however, the Act grants and promotes [1] a broad authorization to the states to protect the health and safety of its workers. *See Rominger, supra,* at 470–71.

Like *Rominger,* in the instant case Congress broadened the federal role through the legislation at issue. Through defining its own role, the federal government placed stated limitations upon the state powers in the regulated area. In the instant situation, the Act notably specifies as one limit the burdening of commerce in § 667(c)(2). Otherwise, there is a broad grant of regulatory power to the states under the Act. As stated by the court in *Rominger*

> Given congressional authorization the State's exercise of that power does not represent an "unreasonable" and therefore impermissible burden on interstate commerce.

*Rominger, supra,* at 471; *see also H.J. Justin & Sons, Inc. v. Brown,* 519 F.Supp. 1383, 1391 (E.D.Cal.1981). Thus, an attack based upon unduly burdening commerce is limited to those situations where the product standard applies. Defendants' motion to dismiss Count III is granted.

### Due Process and Equal Protection

Count IV of plaintiffs' amended complaint alleges that

27. Cal OSHA's adoption and enforcement of GISO 5219 and the Permanent Standard is discriminatory, arbitrary and capricious, and has no rational basis in that there is no basis for Cal OSHA's departure from current EPA and OSHA regulation of EDB exposure, enforcement of GISO 5219 as an emergency standard without hearing, or for the burdensome monitoring, training and warning requirements contained in the regulation, and in that it is designed to and does in fact impact primarily upon interstate shipments of EDB-treated products such as and including those of Plaintiffs.

28. Defendants' adoption and enforcement of GISO 5219 and the Permanent Standard thereby denies plaintiffs the equal protection of the law and due process of law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and will continue unless enjoined and restrained by this Court.

Defendants move for summary judgment, contending that there exists a rational basis for the challenged regulations and classifications as a matter of law.

### Due Process

In addition to challenging the entire scheme of GISO 5219, plaintiffs specifically allege that the requirement that a health warning be posted "whenever EDB is present in the workplace such that exposure may occur as a result of work operations," Title 8, Cal.Admin.Code § 5219(i)(2), violates due process since it provides for arbitrary, capricious and irrational treatment of plaintiffs by applying to areas where EDB is present at levels below 130 parts per billion. Defendants, however, have adequately shown that this posting require-

---

1. *See* 29 U.S.C. § 651(b)(11), which states that one of the thirteen ways the Act seeks to achieve its stated purpose of assuring safe and healthful working conditions is "by encouraging the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws by providing grants to the States to assist in iden- tifying their needs and responsibilities in the area of occupational safety and health, to develop plans in accordance with the provisions of this chapter, to improve the administration and enforcement of State occupational safety and health laws, and to conduct experimental and demonstration projects in connection therewith . . . ."

ment constitutes a reasonable means to advise employees of the potential health hazards associated with EDB exposure.

■ Where, as here, the challenged regulation does not violate a fundamental right, "the burden falls on the challengers to show that it is invidiously discriminating, or that it is patently arbitrary, or that it is utterly lacking in rational justification. [Citations]." *Mass. Coalition of Citizens v. Civil Defense Agency,* 649 F.2d 71, 78 (1st Cir. 1981). Defendants have shown a sufficient rational basis to the posting regulation. Plaintiffs have offered no evidence to rebut this showing.

At the hearing, the parties conceded that all of the evidence on these matters is before the Court. Even if California's EDB standard and its enforcement procedures are not ideal (*see, e.g.,* plaintiffs' affidavit of Donald L. Von Windguth, Tab 127, Exhibit E), the Court should not intervene unless these are so arbitrary, capricious and irrational that they have no rational basis. It is not this Court's function to decide whether Cal–OSHA has the best procedures; rather the Court's analysis ends upon a finding of a rational basis. *See Rice v. Norman Williams Co.,* —— U.S. ——, —— – ——, 102 S.Ct. 3294, 3300–3302, 73 L.Ed.2d 1042 (1982); *Ferguson v. Skrupa,* 372 U.S. 726, 729–32, 83 S.Ct. 1028, 1030–32, 10 L.Ed.2d 93 (1963); *Autotronic Systems, Inc. v. City of Coeur d'Alene,* 527 F.2d 106, 108 (9th Cir. 1975). Defendants' motion for summary judgment is therefore granted as to plaintiffs' due process claims.

*Equal Protection*

■ Plaintiffs also contend that GISO 5219 deprives them of their constitutional right to equal protection because it includes allegedly arbitrary and capricious classifications of exempt and non-exempt facilities. The challenged exemptions are for California fumigation facilities, retail outlets storing up to 2,000 pounds of produce, and the retail leaded gasoline industry. Defendants have shown a rational basis for each of these exemptions: California fumigation facilities were exempted because they are controlled and monitored by the California

Department of Food and Agriculture which enforces an equally stringent EDB regulation; small retail produce outlets and the leaded gasoline industry are unlikely to pose an EDB exposure risk above the approved level. Plaintiffs offered no evidence refuting defendants' showing that these were rational classifications.

Thus, defendants have shown the classifications to be rational, which is all that is required. *Autotronic, supra,* at 108. Further, "a rational 'one step at a time' approach [to solving a problem] defeats a constitutional claim." *Jefferson v. Hackney,* 406 U.S. 535, 546, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972); *see also National Roofing Contractors Ass'n v. Brennen,* 495 F.2d 1294 (7th Cir. 1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975).

There being no evidence that the challenged classifications are irrational, summary judgment for defendants is granted.

IT IS SO ORDERED.