H. J. JUSTIN & SONS, INC., dba Justin Boot Company, a Texas corporation, Plaintiff,

v.

Edmund G. BROWN, Jr., Governor of the State of California, and George Deukmejian, Attorney General of the State of California, Defendants.

No. CIV. S-80-941 RAR.

United States District Court, E. D. California.

Aug. 21, 1981.

Donald M. Pach, Inc., Sacramento, Cal., John B. McAdams, Kelly, Appleman, Hart & Hallman, Fort Worth, Tex., for plaintiff.

Joel S. Moskowitz, Deputy Atty. Gen., Sacramento, Cal., for defendants.

### MEMORANDUM AND ORDER

RAMIREZ, District Judge.

The above-entitled matter came on regularly for hearing by way of cross-motions for summary judgment before the Honorable Raul A. Ramirez on June 8, 1981. Donald M. Pach, Esq. appeared as counsel for plaintiff and Joel Moskowitz, Deputy Attorney General, appeared as counsel for the defendants. Having duly examined the memoranda of points and authorities submitted in support of and in opposition to the respective motions, the exhibits attached thereto, and the respective arguments of counsel, the Court now renders the following memorandum decision:

There are no material issues of fact in dispute. The plaintiff, H. J. JUSTIN & SONS, INC. (hereinafter Justin Boot), fabricates boots from the hides of animals, including the hides of the African elephant, the Indonesian python, and the Wallaby kangaroo. Plaintiff is desirous of selling these boots in California but is deterred from said action by California Penal Code §§ 653o and 653r, which, *inter alia*, forbid the sale within California of products made from the dead bodies, or any part thereof, of the elephant, python, or kangaroo.[1]

Plaintiff initially commenced the present action for declaratory and injunctive relief, and now moves for summary judgment, on the grounds that the challenged provisions of the California Penal Code are unconstitutional. In essence, plaintiff contends that §§ 653o and 653r of the California Penal Code have been preempted by the *Convention on International Trade in Endangered Species of Wild Fauna and Flora*, 27 U.S.T. 1087, T.I.A.S. 8249, and by the Endangered Species Act of 1973, 16 U.S.C. §§ 1531–1543. Plaintiff also contends that these provisions of the California Penal Code impermissibly burden interstate commerce in violation of the Commerce Clause, U.S. Const., Art. I, § 8.

The Court has jurisdiction over the instant action by virtue of 28 U.S.C. § 1331 and 16 U.S.C. § 1540(c). In addition thereto, venue is proper inasmuch as Sacramento is the seat of government for the State of California, Cal. Gov't Code § 450 and because the named defendants are being sued in their official capacities as constitutional officers of the State of California, Cal. Gov't Code § 1060.

The basic principles of the preemption doctrine are too well-settled to require citation: while the states are not prohibited from legislating and regulating in those areas where the states and Congress have concurrent jurisdiction, by virtue of the Supremacy Clause of the United States Constitution, Article VI, Clause 2, the authority of the states to legislate in an area of concurrent jurisdiction is always at the sufferance of Congress. In those areas where Congress has indeed exercised its jurisdiction, it may allow for the continued operation of state legislation and regulation, or it may abrogate state law entirely. Therefore, whether a particular federal enactment preempts state law is always purely a question of Congressional intent.

Occasionally Congress directly addresses the issue of preemption, expressly providing in the text of the legislation for either the abrogation or the continued operation of state law. Frequently, however, Congress remains silent on the issue and it is in those specific instances where it becomes the responsibility of the courts to discover true Congressional intent. In this regard, the courts have recognized the value of certain indicia of Congressional intent:

—are the requirements of the federal law and the state law inevitably conflicting, so that a law-abiding individual cannot comply with both simultaneously?

—what does the legislative history indicate?

—is the federal legislation so complete a regulatory scheme that a Congressional intent to "occupy the field" may be inferred?

—is the subject matter of the legislation one traditionally committed to state or federal concern?

1. California Penal Code §§ 653o and 653r provide as follows:

§ 653o:

(a) It is unlawful to import into this state for commercial purposes, to possess with intent to sell, or to sell within the state, the dead body, or any part or product thereof, of any alligator, crocodile, polar bear, leopard, ocelot, tiger, cheetah, jaguar, sable antelope, wolf (Canus lupus), zebra, whale, cobra, *python*, sea turtle, colobus monkey, *kangaroo*, vicuna, sea otter, free-roaming feral horse, dolphin, or porpoise (Delphinidae), Spanish lynx, or *elephant*. (Emphasis added)

§ 653r:

Notwithstanding the provisions of Section 3 of Chapter 1557 of the Statutes of 1970, it shall be unlawful to possess with intent to sell, or to sell, within the state, after June 1, 1972, the dead body, or any part or product thereof, of any fish, bird, amphibian, reptile, or mammal specified in Section 653o or 653p.

## I

## THE ENDANGERED SPECIES ACT OF 1973

### EXPRESS PREEMPTION

Both the plaintiff and the defendants agree that in passing the Endangered Species Act of 1973, 16 U.S.C. §§ 1531–1543, Congress expressly addressed the issue of preemption. They disagree, however, on the meaning of what Congress actually said. The relevant portions of the Act, 16 U.S.C. § 1535(f), reads as follows:

Any State law or regulation which applies with respect to the importation or exportation of, or interstate or foreign commerce in, endangered species or threatened species is void to the extent that it may effectively (1) permit what is prohibited by this chapter or by any regulation which implements this chapter or (2) prohibit what is authorized pursuant to an exemption or permit provided for in this chapter or in any regulation which implements this chapter. This chapter shall not otherwise be construed to void any State law or regulation which is intended to conserve migratory, resident, or introduced fish or wildlife, or to permit or prohibit sale of such fish or wildlife. Any State law respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits provided for in this chapter or in any regulation which implements this chapter but not less restrictive than the prohibitions so defined.

The plaintiff argues that the residuum of legislative power left to the states in § 1535(f) is limited to the regulation of indigenous species. In support of this argument, plaintiff focuses on the reference to "migratory, resident, or introduced fish or wildlife" in the penultimate sentence and the reference to taking[2] in the last sentence. Additionally, plaintiff argues that subsection (f) should be construed in light

of the other subsections of § 1535, which unambiguously apply to indigenous species. In particular, the plaintiff points the Court's attention to subsection (c).

Subsection (c) of § 1535 is an elaborate and complex provision authorizing the Secretary of the Interior to enter into "cooperative agreements" with the sundry states. By entering into a cooperative agreement with a state, the Secretary delegates the responsibility with which he is otherwise charged to that particular state. Subsection (c) contemplates that the state will assume the responsibility for the conservation of indigenous species, once the Secretary is satisfied that the state is ready, willing, and able to do so.

Plaintiff contends that subsection (c) evinces a high degree of Congressional concern for responsible state action *vis-a-vis* indigenous species, and that subsection (f) must be read in terms of that high degree of Congressional concern. Thus plaintiff contends that subsection (f) must be read in the narrowest possible manner.

█ In opposition to the argument of plaintiff, defendants argue that the last two sentences of subsection (f) are irrelevant to the instant litigation. While admitting that the questioned sentences do in fact express Congressional intent on the subject of preemption of state law regulating indigenous species, defendants contend that the initial sentence of subsection (f) expresses Congressional intent on the subject of preemption of state law regulating other-than-indigenous species. Since the first sentence of subsection (f) refers specifically to state laws or regulations ". . . with respect to the importation . . . of . . . endangered species or threatened species . . . ," defendants persuasively argue that this language can hardly apply to indigenous animals. Thus the defendants would have the Court interpret subsection (f) as though it read as follows:

(i) *State law or regulations applying to non-indigenous species* :

do any of those things. Such activities can logically only take place in the animal's habitat, and thus "taking" statutes only have meaning with respect to indigenous species.

---

2. Section 1532(19) defines "taking" as the harassing, harming, pursuing, hunting, shooting, wounding, killing, trapping, capturing, collecting of any protected animal, or attempting to

Any State law or regulation which applies with respect to the importation or exportation of, or interstate or foreign commerce in, endangered species or threatened species is void to the extent that [, and only to the extent that,] it may effectively (1) permit what is prohibited ... or (2) prohibit what is authorized by permit or exemption....

(ii) *State law or regulations applying to indigenous species* :

This chapter shall not otherwise be construed to void any State law or regulation which is intended to conserve migratory, resident, or introduced fish or wildlife. Any State law or regulation respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits ... but not less restrictive ....

While subsection (f) does not perhaps reach that level of clarity of which the English language is capable, the Court is of the opinion that the interpretation urged by the defendants is the more reasonable. The explicit reference in the first sentence to "importation or exportation of, or interstate or foreign commerce in, endangered species or threatened species" can only be understood to refer to state laws relating to non-indigenous species. In short, the mere reference in the last two sentences to indigenous species does not support the inference that Congress was likewise referring to indigenous species in the first sentence. The interpretation urged by the defendants makes the entire section intelligible, and gives effect to all of the subsection.

As to plaintiff's contention that subsection (c) evinces a high degree of Congressional concern, or even distrust, of the states' willingness or ability to protect endangered or threatened species, the Court is of the opinion that any and all such concern has no bearing on the proper construction of subsection (f). The mere fact that Congress wanted to assure itself that its delegee, the Secretary of the Interior, would not redelegate conservation responsibility without sufficient assurance that the state would meet that responsibility is hardly demonstrative of Congressional unwillingness to permit the states to give more protection to non-indigenous species.

In conclusion, the Court finds that insofar as § 1535(f) constitutes an express statement of Congressional intent on the issue of preemption, it expressly permits the states to continue to legislate and regulate with respect to the importation, exportation, interstate or foreign commerce in non-indigenous species, subject only to the limitation that the states cannot relax the requirements of federal law or contravene the terms of a federal permit or exemption.

## IMPLIED PREEMPTION

As noted above, § 1535(f) is not a pellucid expression of Congressional intent, and for this reason, this Court deems it wise to employ those tools for the determination of Congressional intent as previously discussed. *Cf. Church of Scientology v. U. S. Dept. of Justice*, 612 F.2d 417, 421 (9th Cir. 1979).

### A

### *Inherent Conflict*

An inherent conflict between federal statute and state statute such that " ... compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce," *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), necessarily justifies the inference that Congress intended to preempt state law. The Supremacy Clause, Article VI, Clause 2, requires that in the case of an inherent conflict, federal law prevails.

Plaintiff herein does not argue that compliance with both state and federal law is impossible nor is the argument made that a "Catch-22" situation is created by the simultaneous operation of state and federal law. Since Congressional intent on the subject of preemption is not illuminated either way, the Court will move to the remaining issues in an attempt to resolve the question at hand.

B

*Legislative History*

The legislative history of § 1535(f) is replete with references to the issue of preemption. During the initial hearings by the House on several of the proposed bills to enact the Endangered Species Act of 1973, an Assistant Attorney General of the State of New York opined that the language of certain of the proposed bills was ambiguous, and that the ambiguity might threaten the continued validity of a New York statute quite similar to the California statutes challenged in the instant lawsuit. (*The Endangered Species Act of 1973: Hearings before the Subcommittee on Fisheries and Wildlife, Conservation and the Environment, of the Committee on Merchant Marine and Fisheries*, 93d Cong., 1st Sess. held March 15, 26, and 27, 1973, pg. 351, *et seq.*) The subcommittee members agreed that the language of some of the proposed bills was ambiguous. Since the Administration had drafted at least one of the proposed bills, the chair of the subcommittee wrote to the Assistant Secretary of the Interior for Fish and Wildlife and Parks for clarification of the Administration's position on preemption.

Douglas P. Wheeler, Deputy Assistant Secretary, wrote in response, speaking for the Administration. Mr. Wheeler indicated that it was *not* the Administration's intent to preempt state laws like New York's (or, *ipso facto*, California's). Furthermore, the Administration was desirous of *making a distinction* between state "taking" laws and state laws regulating interstate commerce in endangered species. State "taking" laws could be more restrictive than federal law regardless of the terms of a federal permit or exemption, whereas state regulation of interstate commerce could be more restrictive only if there was no federal permit or exemption. (Letter of June 13, 1973, from Douglas P. Wheeler to the Honorable John D. Dingell, Chairman of the Subcommittee, included in the Hearings transcript at page 387).

Mr. Wheeler agreed with the witness from New York and the members of the subcommittee that the Administration had expressed its intentions ambiguously. Therefore, on behalf of the Administration, Mr. Wheeler offered amending language that would clarify the Administration's intent. This proffered language was adopted by Congress and became § 1535(f).

Of greater persuasive value is the official House Report on the Endangered Species Act, H.R.Rep.No.412, 93d Cong., 1st Sess. (1973). In the official House Report, the reporting Committee noted that the purpose of the proposed legislation was to increase the protection given endangered species by then-existing law. The Committee noted that among the principal changes effected by the new law was the following:

7. It allows states to adopt more restrictive legislation than the Federal laws.

The Committee explicated that with the following discussion:

The question of preemption of state laws was of great interest during the hearings, due in part to the fact that the language in the Administration bill was susceptible of alternative interpretations. Accordingly, the Committee rewrote the language of the Administration bill to make it clear that the states would and should be free to adopt legislation or regulations that might be more restrictive than that of the Federal government and to enforce the legislation. The only exception to this would be in cases where there was a specific Federal permission for or a ban on importation, exploitation, or interstate commerce; in any such case the State could not override the Federal action. *In every other respect, the State powers to regulate in a more restrictive fashion or to include additional species remain unimpaired.* (Emphasis added)

(Report No. 412 at page 7.)

This point was reiterated in the discussion of subsection (f):

This paragraph indicates that the states are to be free to develop regulatory mechanisms which are more stringent or more restrictive than those of the Federal government. Existing state en-

dangered species programs would, for example, be in a position to include species which were not on the Federal list. The only exception to this is contained in the language which expressly prohibits the state from voiding actions specifically permitted by Federal agencies or from permitting specific actions forbidden by Federal agencies. In all other regards, the state law is not pre-empted, but is merely subject to the Federal "floor" of regulations under the Act. *Thus laws already passed in States such as* New York, *California* [Cal.Penal Code §§ 653o and 653r], and Hawaii, *which list additional species or prohibit such activities as sales within their jurisdiction, would remain unaffected.* (Emphasis added) (Report No. 412 at page 14.)

■ The quoted portions of the legislative history are unequivocal and are not qualified by any other portion of the legislative history.[3] Having examined the legislative history the Court is persuaded that Congress did not intend to preempt California Penal Code §§ 653o and 653r by the enactment of the Endangered Species Act of 1973.

## C

### Comprehensive Federal Legislation

Congressional intent to preempt state law is often inferred from the fact that the Congressional legislation is so thorough and complete that Congress has occupied the field, and there is no additional room for state legislation, *see Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978).

The plaintiff herein argues that the Endangered Species Act of 1973 is precisely the sort of comprehensive legislation that warrants the inference of Congressional intent to preempt. Plaintiff points to the time and effort that went into drafting the legislation, the careful balance of competing interests struck by the legislation, and

the detail embraced by the legislation itself. Additionally, plaintiff asserts that the Endangered Species Act of 1973 creates a comprehensive scheme for the regulation of interstate commerce in endangered and threatened species, thus preempting state law.

In light of the legislative history as discussed herein, *supra,* the argument of plaintiff cannot be accepted. Congressional intent to preempt is only inferred from the comprehension of the legislative scheme, and an inference cannot be accorded the same weight as the express declaration of intent contained in the legislative history.

## D

### Traditional Province

■ A final factor considered by the courts in determining Congressional intent to preempt state law is whether the subject matter of the legislation in question is one traditionally committed to state as opposed to federal concern, *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). The plaintiff argues that the regulation of importation and exportation of foreign goods is the traditional province of Congress, and thus a Congressional intent to preempt state law should be inferred from the exercise of Congressional authority embodied in the Endangered Species Act of 1973.

Once again, the legislative history as discussed herein precludes the drawing of the inference suggested by the plaintiff and, accordingly, this Court must find that Congress did not intend to preempt California Penal Code §§ 653o and 653r, except to the extent that those sections prohibit what is authorized by a permit or exemption issued pursuant to the Act or its regulations.

## II

### THE CONVENTION

■ The plaintiff contends that California Penal Code §§ 653o and 653r are pre-

---

3. There are remarks by various congressmen reflecting on the advantages of preemption. These remarks, being merely the expression of the opinion of the individual speaker, do not constitute reliable indicia of Congressional intent.

empted not only by the Endangered Species Act of 1973 but also by the *Convention on International Trade in Endangered Species of Wild Fauna and Flora*, 27 U.S.T. 1087, T.I.A.S. 8249. The plaintiff quite properly notes that by virtue of the Supremacy Clause, a treaty, once ratified by the United States Senate, is an integral part of the supreme law of the land and prevails over state law. From this position, plaintiff goes on to explicate what it perceives as the conflict existing between the California statutes and the Convention.

The Court finds it unnecessary to address the points raised by the plaintiff. The Convention is not self-executing since implementing legislation must be enacted by Congress before the Convention has the force of law. Moreover, once enacted, it is the implementing legislation, and not the treaty itself, that is the law of the land, *Hopson v. Kreps*, 622 F.2d 1375, 1380 (9th Cir. 1980):

> Moreover, "if a treaty is not self-executing it is not the treaty but the implementing legislation that is effectively 'law of the land.'" [cite]

The implementing legislation of the Convention is the Endangered Species Act of 1973, see, e. g., 16 U.S.C. §§ 1531(4)(F), 1532(4), 1537a, and 1538(c). In light of the Court's conclusion that the Endangered Species Act of 1973 did not preempt California Penal Code §§ 653o and 653r, there is no need to discuss the terms of the Convention.

### III

### THE PERMIT

■ Plaintiff concedes that he has no permit or exemption from the Secretary of the Interior to import or sell in interstate commerce the Indonesian python or the Wallaby kangaroo. Plaintiff does, however, have a permit for the sale in interstate commerce of the African elephant. Plaintiff asserts that the possession of this permit voids the application of California Penal Code §§ 653o and 653r as to the sale of African elephant products.

The parties are agreed that Congress has, in 16 U.S.C. § 1535(f), reserved the right to abrogate state law by the issuance of a permit, see *Fouke Co. v. Brown*, 463 F.Supp. 1142 (E.D.Cal.1979), and delegated the permit authority to the Secretary of the Interior. Thus the sole question is whether the Secretary has actually exercised his conceded power.

The plaintiff contends, of course, that he has. In this regard, plaintiff points not only to the mere issuance of the permit, but also to that part of the permit which provides that the questioned activity may be conducted "within the United States."

The defendants argue that the Secretary has not exercised the power he undoubtedly has, but rather has conditioned the plaintiff's permit on the plaintiff's compliance with California state law. In support of this contention, defendants rely on Condition B of the plaintiff's permit:

> The validity of the permit is also conditioned upon strict observance of all applicable foreign, state, local, or other federal law.

The defendants maintain that by the inclusion of this language the Secretary limited the plaintiff's right to sell products fabricated of elephant hide to those states and only those states where state law did not otherwise forbid it.

Plaintiff vigorously disputes the defendants' reading of Condition B. It is the plaintiff's position that the use of the words "strict observance" can only be understood to refer to laws that are capable of being strictly observed, i. e., laws that impose an affirmative duty rather than a flat prohibition. Plaintiff also suggests that this reading is supported by the inclusion of the word "applicable" to modify the state law which must be observed. According to plaintiff, the permit itself makes California's flat prohibitions inapplicable, and only those laws remaining after the disregard of the flat prohibitions must be strictly observed.

The Court is of the opinion that the enforceability of California Penal Code §§ 653 o and 653r with respect to the plaintiff's sale of African elephant boots in California turns entirely on the meaning of the language of Condition B. While the Court finds that the language of Condition B is somewhat ambiguous, the Court has no difficulty in interpreting Condition B as providing "void where prohibited by state law," although other reasonable alternative interpretations are likewise available.

For the reasons as stated herein, the Court holds that Condition B of the plaintiff's permit requires the plaintiff to refrain from the sale of elephant hide boots in California. Construing Condition B to mandate compliance with California law is warranted by several different considerations: No national policy will be undermined by reading the permit to require observance of California's laws; Congress has already indicated its willingness to permit California to ban the sale of goods fabricated from the hides of other, less endangered species—goods that would otherwise be able to move freely in interstate commerce; Congress has demonstrated by the legislative history of the Endangered Species Act of 1973 its willingness to leave California's laws "unaffected."

As a final note, the interpretation suggested by the defendants affords the maximum amount of protection to elephants, which is in and of itself, consistent with the purpose of the Endangered Species Act of 1973. By construing the permit to require compliance with California law, the anomalous result that less endangered species are better protected than more endangered species is avoided. Were the Court to adopt the plaintiff's argument as suggested, the laws of the State of California would provide greater protection to the Indonesian python and the Wallaby kangaroo, although it is the African elephant which is in greater danger of extinction.

Accordingly, the Court concludes that the permit issued to the plaintiff to sell elephant products in interstate commerce does not permit it to do so within the confines of the State of California.

## IV

### IMPERMISSIBLE BURDEN ON INTERSTATE COMMERCE

■ Finally, the plaintiff contends that the California statutes impermissibly burden interstate commerce.

No useful purpose would be served by repeating once again the relative power of the states and Congress over the regulation of interstate commerce in the absence of Congressional allocation of power to the states. In *Southern Pacific Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945), the Court observed that:

> Congress has undoubted power to redefine the distribution of power over interstate commerce. It may either permit the states to regulate the commerce in a manner which would otherwise not be permissible ... or exclude state regulation even of matters of peculiarly local concern which nevertheless affect interstate commerce ....

Id. at 769, 65 S.Ct. at 1520.

As the legislative history of the Endangered Species Act of 1973 makes clear, Congress was aware of the existence of California Penal Code §§ 653o and 653r and of the extent to which they limited interstate trade in products of animal hides. Congress nevertheless decided that the state statutes would remain "unaffected" by the enactment of the Endangered Species Act of 1973, House Report 93–412. This constitutes an unmistakeable approval by Congress of the challenged statutes. As noted by my brethren in another, similar, context:

> Thus it is clear that Congress has the power to provide the states with regulatory power over instances of interstate commerce such as those *sub judice*. Congress has ... done just that. Given congressional authorization the state's exercise of that power does not represent an

"unreasonable" and therefore impermissible burden on interstate commerce.

*National Agricultural Chemicals Assn. v. Rominger*, 500 F.Supp. 465, 471 (E.D.Cal. 1980). This Court finds that California Penal Code §§ 653o and 653r do not impermissibly burden interstate commerce.

### CONCLUSION

For these reasons and all other reasons as stated herein, plaintiff's motion for summary judgment is Denied, and defendants' motion for summary judgment is Granted, and the complaint herein is Dismissed.

IT IS SO ORDERED.